Roger Wayne WHEELER, et al., Appellants,

v.

YETTIE KERSTING MEMORIAL HOSPITAL, et al., Appellees.

No. 01-88-00024-CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1988.

Rehearing Denied Dec. 8, 1988.

Les Cochran, Barnhard, Mallia & Cochran, Houston, for appellants.

James R. Ansell, Fredrick J. Bradford, McLeod, Alexander, Powel & Apffell, Galveston, for appellees.

Before EVANS, C.J., COLEMAN, C.J. (Retired), and PEDEN, J. (Retired).

OPINION

COLEMAN, Retired Chief Justice.

This is an appeal from a summary judgment in a malpractice action granted in favor of the appellees, Yettie Kersting Memorial Hospital, University of Texas Medical Branch and John Sealy Hospital, Life Support Team, Emergency Medical Technicians ("EMTs") J.R. Davis and Ernest Koehler, Nurses Michele Davidson and Sylvia Colvin, and Doctor Sergio Rodriquez against appellants, Roger Wayne Wheeler and Barbara Jo Wheeler, individually and as surviving parents of the infant, Phillip Robert Wheeler, deceased.

The judgment will be affirmed in part, reversed in part, and remanded for trial.

Barbara Jo Wheeler was eight months pregnant when she contacted the Life Support Team, consisting of EMTs Davis and Koehler, to transport her to John Sealy Hospital ("John Sealy") in Galveston. The EMTs transported her to Yettie Kersting Memorial Hospital ("Yettie Kersting"), the nearest medical facility in Liberty, for a medical assessment to determine whether she could successfully make the trip to John Sealy. While at Yettie Kersting, Nurses Davidson and Colvin assessed Wheeler's condition and received approval for the transport from Dr. Sergio Rodriquez and a physician at John Sealy.

En route to John Sealy, Mrs. Wheeler's labor progressed rapidly. The EMTs stopped the ambulance in Kemah, Texas, to assist with the delivery and notified John Sealy's Life Flight Emergency Team. Because Wheeler was having contractions and the fetus was not coming out of the birth canal, EMT Davis tore the amniotic sac to release the fluid surrounding the baby and speed up the delivery. Several minutes later, the fetus presented in a frank breech position (feet first) and was delivered up to the shoulders where the birth process stopped.

When John Sealy's Life Flight Emergency Team arrived, they found EMT Koehler supporting the fetus, its head and neck still inside the womb. The Life Flight nurse, Carolyn Harker, attempted to create an airway for the baby, but the cervix was clamped down tightly around its neck. She noted that the baby's limbs were cyanotic and limp. She then pressed around Wheeler's vulva, and the baby's head was delivered, with the umbilical cord wrapped around its neck. The fetus was limp and lifeless, and all resuscitation efforts were unsuccessful.

In their first two points of error, the Wheelers contend that the trial court erred in granting summary judgment because Phillip Robert Wheeler was born alive, or there is a fact issue as to whether he was born alive, and they are entitled to pursue their statutory wrongful death action.

The Wheelers contend that the baby was born alive because his birth was complete except for his head and neck. There was evidence that the child was viable with movement of the lower extremities as the birth process began, but that when the baby's head became entrapped by the cervix, it became cyanotic and limp. The autopsy report stated that the death was caused by "anoxia due to interruption of the feto placental circulation by trapping of the umbilical cord between the cervix and the fetal head during the prolonged breech delivery."

Carolyn Harker, the Life Flight nurse, testified that the fetus was "delivered limp and lifeless at approximately 1725 and made no attempts at spontaneous breathing, even with manual stimulation." She noted that the fetus was limp, cyanotic, had no pulse or heart rate, and no spontaneous respirations. The fetus was stained with large amounts of meconium, indicating fetal distress or insufficient oxygen. Harker attempted mouth-to-mouth resuscitation, and two unsuccessful attempts were made to intubate the infant.

Resuscitation efforts continued, and the baby was transported via Life Flight to John Sealy. The nurse's notes indicate that there was "no change in the infant since delivery." A heart monitor was attached at the hospital, but no rhythm was ever seen. The baby was pronounced dead at "1751" by Dr. Crouse after all resuscitation efforts proved unsuccessful.

The medical records repeatedly reflect a "stillbirth." The Certificate of Fetal Death indicates that the death occurred "before labor" was completed and also reflects that the child was stillborn. There is no evidence to the contrary.

■ Where there has been no live birth, there is no valid wrongful death or survival claim. *Witty v. American Gen. Capital Dist., Inc.*, 727 S.W.2d 503 (Tex.1987). In *Witty*, the court stated that where a fetus dies in utero, survival action damages either do not exist or may be recovered as part of the mother's personal injury damages. *Id.* at 506. Points of error one and two are overruled.

■ The Wheelers' sixth point of error, asserting a common law wrongful death cause of action, is not properly before this Court. The Wheelers did not allege this theory of recovery in their pleadings, nor was it presented in their response to summary judgment. Moreover, the *Witty* case specifically stated that there is no cause of action at common law for wrongful death and survival because both are creatures of statute. 727 S.W.2d at 404.

Point of error six is overruled.

In their third, fourth, and fifth points of error, the Wheelers contend that the trial court erred in granting summary judgment because they are entitled to assert common

law causes of action for direct emotional damages, breaches of duty and negligence, and "bystander" emotional damages.

The appellees contend that these common law theories were not "expressly presented" to the trial court as grounds to defeat a summary judgment, and therefore, are waived. *See* Tex.R.Civ.P. 166a(c).

In their joint motion for summary judgment, the appellees moved for summary judgment only on the statutory causes of action asserted in the Wheelers' first amended original petition. This motion was limited to the Wheelers' causes of action for wrongful death and survival and did not address the Wheelers' common law cause of actions that were asserted in both their second and third amended original petitions, which were filed on May 28, 1987, and June 4, 1987. Although the summary judgment motion was filed on May 12, 1987, the summary judgment hearing did not occur until June 11, 1987.

A summary judgment hearing is a "trial" with respect to the filing of amended pleadings under Tex.R.Civ.P. 63. *Mainland Savings Ass'n v. Wilson*, 545 S.W.2d 491, 493 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ). Parties may amend their pleadings provided that any amended pleading offered for filing within seven days of the date of the trial may be filed only after leave of the court is obtained. Tex.R.Civ.P. 63. In the instant case, amended pleading alleging additional causes of action under common law was timely filed.

A motion for summary judgment will stand or fall on the grounds specifically set forth therein. *Ortiz v. Spann*, 671 S.W.2d 909, 914 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (op. on reh'g). A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to all of the plaintiff's causes of action. *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1986). The appellees have failed to meet this burden in regard to the Wheelers' common law causes of action.

The common law causes of action were brought to the attention of the trial court in the Wheelers' response to the motion for summary judgment. In this response, it was pointed out that "Plaintiffs also assert a common law cause of action for pain, grief, suffering and mental anguish and a common law action for humiliation and embarrassment."

■ The pleadings with regard to the common law causes of action were terse, and, possibly deficient. If so, the deficiency is one that could be cured by amendment. A summary judgment is not proper under such circumstances. *Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex. 1983). Points of error three, four, and five are sustained.

■ The trial judge entered a judgment decreeing that the plaintiffs take nothing "by way of this cause of action herein," and that "all relief not expressly granted herein, is denied." Thus, the judgment expressly disposes of all issues in the case, rendering the judgment final for purposes of an appeal. *See Schlipf v. Exxon Corp.*, 644 S.W.2d 453 (Tex.1982).

While there is no point of error specifically complaining that the court erred by rendering a final judgment rather than an interlocutory judgment, this error has been presented by points of error three, four, and five. The trial court should have entered an interlocutory or partial summary judgment. *Teer v. Duddlesten*, 664 S.W.2d 702 (Tex.1984).

The judgment of the trial court is reformed to reflect an interlocutory summary judgment on the statutory causes of action under the wrongful death and survival acts. As reformed, the cause is remanded to the trial court on the common law causes of action.